UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COLLEEN KERWICK, | ) | CASE NO. 3:24-CV-00427 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF CONNECTICUT, PULLMAN | ) | December 11, 2024 |
| & COMLEY LLC, KENNETH | ) | |
| DOMINIC SAVINO, and KEN | | |
| SAVINO TRUST, | | |
| *Defendants*. | | |

**MEMORANDUM OF DECISION**
**RE: STATE OF CONNECTICUT'S MOTION TO DISMISS [ECF NO. 21]**

Kari A. Dooley, United States District Judge:

Plaintiff Colleen Kerwick ("Plaintiff" or "Kerwick") brings this action against the State of Connecticut (the "State"), Pullman & Comley LLC ("Pullman"), Kenneth Dominic Savino ("Savino"), and the "Ken Savino Trust" (collectively, "Defendants"). Plaintiff asserts claims under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, and the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, alleging that Defendants conspired to injure her and did injure her throughout the course of and even after certain state family court proceedings involving Plaintiff and her now ex-husband, Defendant Savino. The State, Pullman, and Savino all filed separate motions to dismiss. The Court addresses herein the State's motion to dismiss, filed pursuant to Rules 12(b)(1) and 12(b)(6).[1] For the reasons that follow, the State's motion is GRANTED.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[1] The Court will address Pullman's and Savino's motions to dismiss in separately docketed opinions.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678.  Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

The appropriate analysis for a facial challenge to subject matter jurisdiction, like the one raised by the State, is similar to that required under Rule 12(b)(6).  "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it . . ., the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  The task of the district court is to determine whether, after accepting as true all material factual allegations of the complaint and drawing all reasonable inferences in favor of the plaintiff, the alleged facts affirmatively and plausibly suggest that the court has subject matter jurisdiction. *Id.* at 56–57.

**Allegations and Procedural History**

Plaintiff Colleen Kerwick (also known as Colleen NiChairmhaic) is an attorney proceeding *pro se*.[2]  The allegations in the Complaint arise out of Plaintiff's divorce and custody

---

[2] "[A] lawyer representing h[er]self ordinarily receives no . . . solicitude at all."  *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (collecting cases).

2

proceedings in the Connecticut Superior Court with her ex-husband, Savino. Compl., ECF No. 1, ¶ 1. Plaintiff alleges that the Defendants conspired to "coercively control" Plaintiff. Specifically, the Complaint states that "Connecticut rewarded and encouraged coercive control before their Family Courts by expressly conspiring to favor fathers in child custody disputes to posture for funding from the fatherhood initiative in a fully executed Memorandum of Understanding."[3] *Id.* ¶ 5.

Most of Plaintiff's allegations as to the State involve various judicial proceedings in the Connecticut Superior Court and orders by that court. By way of example, Plaintiff alleges that the State "inflicted severe damages on Plaintiff via coercively controlling where she lives" by "order[ing] Plaintiff to reside within a fifteen (15) mile radius of Savino for the past decade." *Id.* ¶¶ 18–19 (footnote omitted); *see also id.* ¶ 23 ("Pullman and/or an attorney now under their employ entered a travel restriction on a surprise 'motion in limine' at a hearing on January 2, 2013 after a protective order had been granted in favor of Plaintiff." (footnote omitted)). She also alleges that Connecticut police were "hoodwinked" in 2011 and 2014 when they attempted, but failed, to arrest Plaintiff, at Savino's behest. *Id.* ¶ 20.

Plaintiff filed the present Complaint on March 23, 2024. She asserts two causes of action against the State of Connecticut: "intentional infliction of emotional suffering" under the ATS (Count 1); and violations of the civil RICO statute (Count 2). *Id.* ¶ 1. The State moved to dismiss, arguing that dismissal is appropriate on multiple grounds: (1) the Eleventh Amendment bars Plaintiff's claims against the State; (2) Plaintiff has failed to state a claim under Rule

---

[3] Plaintiff alleges that this Memorandum of Understanding (MOU), entered into by the judicial branch and other Connecticut state agencies, disadvantages mothers in child custody proceedings. Compl., ECF No. 1, ¶ 5 n.5. The MOU's purpose was allegedly for the State to "support positive father involvement" by "seek[ing] opportunities for funding, consistent with [that] mission." *Id.* Plaintiff claims that the State was motivated by this MOU in supporting the "coercive control" alleged in the Complaint.

12(b)(6); and (3) Plaintiff has failed to properly serve the State under Rule 4(m). State's Mot. to Dismiss, ECF No. 21-1.[4]

**Discussion**

The State first argues that both claims asserted by Plaintiff are barred by the Eleventh Amendment and the sovereign immunity afforded thereunder. The Court agrees. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Eleventh Amendment has been interpreted as also barring suits in federal court against a state brought by that state's own citizens." *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 151 (2d Cir. 2013). Eleventh Amendment immunity from suit "applies regardless of the nature of the relief sought," except in circumstances "where the state has consented to be sued or Congress has abrogated the states' Eleventh Amendment immunity." *Lee v. Dep't of Child. & Fams.*, 939 F. Supp. 2d 160, 165 (D. Conn. 2013) (quotations omitted). The existence of Eleventh Amendment immunity implicates this Court's subject matter jurisdiction. *Alabama v. Pugh*, 438 U.S. 781, 782 n.1 (1978).

The State of Connecticut has not waived its immunity or consented to be sued under either the ATS or the civil RICO statute. Plaintiff does not argue otherwise. Nor did Congress abrogate the states' sovereign immunity when it enacted either the ATS or the civil RICO statute. In order to abrogate the states' sovereign immunity, Congress must unequivocally express its intent to do so. *In re Deposit Ins. Agency*, 482 F.3d 612, 622 (2d Cir. 2007). The language of the ATS or civil RICO statute express no such intent, and Plaintiff cites no authority to the

---

[4] As explained below, the Court finds that the Eleventh Amendment immunizes the State against Plaintiff's claims. Accordingly, the Court does not address the alternate grounds for the State's motion, including the merits of Plaintiff's claims under Rule 12(b)(6) and the issue of whether service was properly effectuated.

contrary.[5]  *See Moskovits v. Mercedes-Benz USA, LLC*, No. 22-10664, 2022 WL 17259158, at *1 (11th Cir. Nov. 29, 2022) (holding that Congress did not abrogate Eleventh Amendment immunity for claims brought under the ATS);[6] *Inkel v. Connecticut*, No. 3:17-CV-1400, 2019 WL 1230358, at *5 (D. Conn. Mar. 15, 2019) ("[T]he RICO statute contains no express abrogation of Eleventh Amendment immunity, and courts in this circuit have held that the immunity applies to such claims." (citation omitted)).

Notwithstanding, Plaintiff argues that sovereign immunity does not apply to her claims because she alleges criminal activity by the State.  Opp'n to State's Mot., ECF No. 32, ¶ 25.[7]  Regardless of whether she characterizes the conduct as criminal, tortious, or in some other fashion, the Complaint asserts two *civil* causes of action.  Further, the text of the Eleventh Amendment itself does not distinguish between civil or criminal claims.  U.S. Const. amend. XI (states shall have absolute immunity against "*any* suit in law or equity, commenced or *prosecuted*" (emphases added)).  Finally, Plaintiff appears to concede in her opposition that the State has immunity as to her claims.  *See* Opp'n to State's Mot., ECF No. 32, ¶ 29 ("As an avid chess player, I know when to resign (*See Exhibit D*)[8] to save time and effort or, in this case, time, money and judicial resource.").

---

[5] Title 28, U.S.C. section 1350 provides, in its entirety: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  Similarly, 18 U.S.C. § 1964 provides in pertinent part that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court."  Neither statute makes any reference to claims against states.

[6] A virtually identical prior lawsuit brought by Plaintiff against the State, which also asserted ATS claims, was similarly dismissed on sovereign immunity grounds.  *See Kerwick v. Connecticut*, 3:19-CV-966 (VLB), 2019 WL 6307469, at *1–2 (D. Conn. Nov. 25, 2019).

[7] A nearly identical argument, that the state did not have sovereign immunity for their "intentionally wrongful acts," was advanced in the prior litigation and rejected by this Court.  *Kerwick*, 2019 WL 6307469, at *2.

[8] Plaintiff's "Exhibit D," attached to her opposition to the State's motion to dismiss, is an email dated September 9, 2024, from Plaintiff to counsel for the State, in which she states: "I can stipulate to release the State on immunity grounds, to save time money and judicial resource."  Pl.'s Ex. D, ECF No. 32-5.  That Plaintiff, a

The State of Connecticut is protected by Eleventh Amendment immunity with respect to all the claims asserted against it in the Complaint.

**Conclusion**

As explained above, the State of Connecticut's motion to dismiss is GRANTED in its entirety. The Clerk of the Court is directed to terminate the State as a defendant.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of December, 2024.

                                    */s/ Kari A. Dooley*
                                    KARI A. DOOLEY
                                    UNITED STATES DISTRICT JUDGE

---

practicing attorney, persists in her claims against the State, especially following the dismissal of her earlier suit against the State on sovereign immunity grounds, is very troubling. *See, e.g.*, Fed. R. Civ. P. 11(b).