UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COLLEEN KERWICK, | ) | CASE NO. 3:24-CV-00427 (KAD) |
|    *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PULLMAN & COMLEY LLC, | ) | December 20, 2024 |
| KENNETH DOMINIC SAVINO, and | ) | |
| KEN SAVINO TRUST, | | |
|    *Defendants*. | | |

**MEMORANDUM OF DECISION**
**RE: PULLMAN & COMLEY'S MOTION TO DISMISS [ECF NO. 23]**

Kari A. Dooley, United States District Judge:

Plaintiff Colleen Kerwick ("Plaintiff" or "Kerwick"), a citizen of Ireland, brings this action against the State of Connecticut (the "State"), Pullman & Comley LLC ("Pullman"), Kenneth Dominic Savino ("Savino"), and the "Ken Savino Trust" (collectively, "Defendants"). Plaintiff asserts claims under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, and the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, alleging that Defendants conspired to injure her and did injure her over the course of state family court proceedings between her and her now ex-husband, Defendant Savino. The State, Pullman, and Savino all filed separate motions to dismiss. Herein, the Court addresses only Pullman's motion to dismiss.[1] For the reasons that follow, Pullman's motion is GRANTED.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[1] The Court addressed the State's motion to dismiss in a separately docketed decision, *see* Order, ECF No. 42, and likewise will separately docket a decision regarding Savino's motion to dismiss once supplemental briefing is received. *See* Order, ECF No. 43.

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Allegations and Procedural History**

Plaintiff Colleen Kerwick (also known as Colleen NiChairmhaic) is an attorney proceeding *pro se*.[2] The allegations in the Complaint arise from Plaintiff's divorce and custody proceedings in the Connecticut Superior Court against her ex-husband, Defendant Savino. Compl., ECF No. 1, ¶ 1. Pullman is a Connecticut law firm whose lawyers represented Savino in the original divorce proceedings in 2011, and again in 2013. *Id.* ¶ 3. Plaintiff claims that lawyers at Pullman—including one of her own former attorneys, Savino's former attorneys, and a Superior Court judge who ruled on one of her cases, *id.*—conspired to "coercively control" Plaintiff. *See id.* ¶¶ 30, 39–40. Specifically, the Complaint alleges that Pullman "inflicted severe damages on Plaintiff via coercively controlling where she lives, the sanctity of her home, her ability to associate with family and culture, her ability to work, and freedom from Savino's coercive control." *Id.* ¶ 18.

---

[2] "[A] lawyer representing h[er]self ordinarily receives no . . . solicitude at all." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (collecting cases).

Plaintiff also generally alleges that Pullman attorneys lied to the Superior Court and to police to obtain *ex parte* court orders and arrest warrants against Plaintiff. *See id.* ¶¶ 41, 43. The Complaint states that Pullman "made more than a dozen failed arrest attempts against Plaintiff," and that Pullman lied to police to attempt to arrest Plaintiff on August 22, 2014. *Id.* ¶ 41. Similarly, she alleges that Pullman attorneys "lied to the [Superior] Court for '*ex parte* orders' on December 20, 2013 and March 17, 2020," *id.* ¶ 43, and that "an attorney under the employ of Pullman has repeatedly lied to the [superior] court." *Id.* (footnotes omitted).

**Discussion**

Plaintiff filed the present Complaint on March 23, 2024, and she asserts ATS and civil RICO claims against Pullman. Pullman moved to dismiss both counts on numerous grounds: it was improperly served under Rule 4(m); the conduct alleged is protected by the litigation privilege; the Court should abstain from hearing the case under the domestic relations abstention doctrine; Plaintiff lacks RICO standing; the claims are barred by the applicable statute of limitations, and Plaintiff fails to state a claim for which relief can be granted. *See* Pullman's Mot. to Dismiss, ECF No. 23. Because the Court finds that Plaintiff's claims against Pullman must be dismissed for failure to state a claim, the Court need not and therefore does not address in detail the remainder of Pullman's asserted grounds for dismissal.

I.  Count 1: Alien Tort Statute

The Alien Tort Statute, also known as the Alien Tort Claims Act, "gives federal courts jurisdiction to hear certain civil actions filed by aliens." *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1935 (2021).[3] The ATS "does not create a cause of action" itself, but instead, invests courts with a limited "common-law authority . . . to create private rights of actions" for

---

[3] The Alien Tort Statute states, in full: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.

violations of the laws of nations. *Id.*; *see also Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004) ("Although we agree the statute is in terms only jurisdictional, we think that at the time of enactment the jurisdiction enabled federal courts to hear claims in a very limited category defined by the law of nations and recognized at common law.").

It remains black letter law in the Second Circuit that the ATS cannot attach liability to *any* corporate entities, foreign or domestic. *Kiobel v. Royal Dutch Petroleum Co.* ("*Kiobel I*"), 621 F.3d 111, 145 (2d Cir. 2010) ("Because corporate liability is not recognized as a 'specific, universal, and obligatory' norm, it is not a rule of customary international law that we may apply under the ATS." (quoting *Sosa*, 542 U.S. at 732)), *aff'd on other grounds*, 569 U.S. 108 (2013); *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 151 (2d Cir. 2015) (reaffirming *Kiobel I*). Pullman is clearly one such corporate entity—the holding in *Kiobel I* is therefore fatal to Plaintiff's ATS claim against Pullman.

Notwithstanding, Plaintiff argues that *Kiobel I* is distinguishable because that case "involv[ed] foreign nationals suing companies for acts in foreign countries." Opp'n to Pullman's Mot., ECF No. 28, at 24 (¶ 53). While that is correct, the Second Circuit's holding in *Kiobel I* did not limit its holding to *foreign* corporations. The court barred ATS liability for *all* corporations. *In re Arab Bank*, 808 F.3d at 151 ("*Kiobel I* held that federal courts lack jurisdiction over ATS suits against corporations . . . ."). Although the Supreme Court affirmed *Kiobel I* in *Kiobel v. Royal Dutch Petroleum Co.* ("*Kiobel II*"), 569 U.S. 108 (2013),[4] *Kiobel II*

---

[4] Plaintiff relies upon Justice Breyer's concurrence in *Kiobel II* as follows: "Justice Breyer, joined by Justices Ginsburg, Sotomayor, and Kagan, relying on foreign relations law stated that they would grant jurisdiction 'where (1) the alleged tort occurs on American soil, (2) the defendant is an American national, or (3) the defendant's conduct substantially and adversely affects an American national interest.' All three prongs apply to this action." Opp'n to Pullman's Mot., ECF No. 28, at 24 (¶ 53) (quoting *Kiobel II*, 569 U.S. at 127 (Breyer, J., concurring)). But this test was not the majority holding of the Court. *See Kiobel II*, 569 U.S. at 127 (Breyer, J., concurring) ("I agree with the Court's conclusion but not with its reasoning."). The majority holding in *Kiobel II* rested on extraterritoriality considerations, which are irrelevant to Plaintiff's claims, as Pullman is a domestic corporate entity and all the alleged acts in the Complaint occurred in the United States.

explicitly did not reach the question of corporate liability. *In re Arab Bank*, 808 F.3d at 153. Accordingly, the holding in *Kiobel I*, barring corporate liability for *all* corporations under the ATS, remains the law in this Circuit. *Id.* at 158.[5]

Accordingly, Plaintiff's ATS claim against Pullman must be dismissed. *See, e.g.*, *Khokhlov v. Euroclear SA/NV*, No. 23-CV-1501, 2024 WL 4451413, at *4 (S.D.N.Y. June 27, 2024) (dismissing ATS claim against corporation under *Kiobel I*), *report and recommendation adopted*, 2024 WL 4345586 (Sept. 30, 2024).

II.     Count 2: Civil RICO[6]

Congress enacted RICO to address the unlawful activities of those individuals involved in organized crime in in the United States. *See Att'y Gen. v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 107 (2d Cir. 2001) ("RICO is a broadly worded statute that has as its purpose the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce." (quotation omitted)).  RICO is directed at "'racketeering activity,' which i[s] define[d] as any act 'chargeable' under several generically described state

---

[5] The other case that Plaintiff relies on—*Presbyterian Church of Sudan v. Talisman Energy*, 582 F.3d 244 (2d Cir. 2009)—was decided pre–*Kiobel I* and did not decide the issue of whether the ATS applied to corporate entities. *Presbyterian Church of Sudan*, 582 F.3d at 261 n.12 ("Because we hold that plaintiffs' claims fail on other grounds, we need not reach, in this action, the question of whether international law extends the scope of liability to corporations." (quotation omitted)).  As discussed above, the Circuit subsequently addressed this issue in *Kiobel I* and determined that international law does not extend liability to corporations.

[6] In addition to its arguments regarding the merits of Plaintiff's RICO claim, Pullman also argues that (1) Plaintiff does not have RICO statutory standing because she failed to assert an injury to her business or property, and (2) Plaintiff's claim is time-barred under RICO's four-year statute of limitations. Pullman's Mot. to Dismiss, ECF No. 23-1, at 23–26.  First, although the Court agrees that Plaintiff has failed to assert an economic injury under RICO, the Court need not address that issue here in order to rule on the sufficiency of the pleading. "'RICO standing,' unlike Constitutional standing, is not a 'jurisdictional' matter as such, and 'a court has original jurisdiction over a RICO claim even if plaintiffs lack standing under the RICO statute.'" *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 236 n.9 (E.D.N.Y. 2010) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006)).  Second, the Court also need not address the timeliness of this claim because the RICO statute of limitations is similarly non-jurisdictional. *Cf. Rotella v. Wood*, 528 U.S. 549, 560–61 (2000) (noting that RICO is subject to equitable tolling).

criminal laws,[7] any act 'indictable' under numerous specific federal criminal provisions, and any 'offense' involving bankruptcy or securities fraud or drug-related activities that is 'punishable' under federal law." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 482–83 (1985) (quoting 18 U.S.C. § 1961(1)). Section 1962 contains four subsections that set forth the criminal activities prohibited under RICO. *See* 18 U.S.C. § 1962(a)–(d). Section 1964 creates a private civil action for treble damages for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c).

"A private cause of action under RICO requires that the plaintiff allege: '(1) the defendant's violation of 18 U.S.C. § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006). To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains [an] interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123–24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)). To demonstrate a pattern of racketeering activity, a plaintiff must allege two or more predicate acts, as defined in 18 U.S.C. § 1961(1), that "pose a threat of continuous criminal activity" and are "related to each other." *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

The Complaint's allegations against Pullman can be distilled into two buckets: (1) Pullman "support[ed] coercive control and conflict," by allegedly controlling where Plaintiff

---

[7] The offenses under state law include "murder, kidnapping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1).

lives through court orders, Compl., ECF No. 1, ¶¶ 30, 39–40; and (2) Pullman allegedly lied to the Connecticut Superior Court and to police to obtain *ex parte* orders and arrest warrants against Plaintiff, *id.* ¶¶ 41, 43.  On these allegations, this RICO claim is utterly baseless.  None of the allegations in the Complaint can be fairly read, even if liberally construed, as setting forth a RICO claim.  Vague allegations of "supporting coercive control and conflict" do not support a criminal cause of action covered by RICO, nor do they even gesture to one.  Nor, for that matter, could the efforts to obtain lawful court orders or statements made to law enforcement ever be considered a criminal predicate act.  *See, e.g.*, *Wood v. Inc. Vill. of Patchogue*, 311 F. Supp. 2d 344, 352–53, 356 (E.D.N.Y. 2004) (dismissing all RICO claims against state judges under doctrine of judicial immunity).[8]

Nor has Plaintiff alleged that these purported predicates constituted a pattern of racketeering.  *See Rivera v. NCB Mgmt. Servs., Inc.*, No. 3:23-CV-221 (MPS), 2023 WL 7553051, at *8 (D. Conn. Nov. 14, 2023).  "[C]ourts in this Circuit have repeatedly held that a plaintiff has not alleged a RICO violation where he or she has pled only a single scheme of a narrow scope, including one victim and a limited number of participants."  *Maguire v. Ameriprise Fin. Servs., LLC*, No. 3:22-CV-128 (VAB), 2022 WL 1718038, at *10 (D. Conn. May 27, 2022) (quotation omitted) (collecting cases).  Plaintiff alleges that Defendants' scheme targeted only her, and it was focused on "coercively controlling" her.  This type of narrow, limited scheme is insufficient to establish a pattern of racketeering activity.  *See, e.g.*, *Feirstein v. Nanbar Realty Corp.*, 963 F. Supp. 254, 260 (S.D.N.Y. 1997) ("[T]here is nothing more than a

---

[8] To the extent that the RICO claim is, in this fashion, predicated on Pullman's conduct while representing Defendant Savino in the family court matters, the Court agrees with Pullman that any such conduct is protected as subject to the litigation privilege.  *Simms v. Seaman*, 308 Conn. 523, 543–47 (2013) (recognizing that litigation privilege protects attorneys from claims of defamation; intention infliction of emotional distress; and intentional interference with contractual or beneficial relations, and holding that the litigation privilege also protects attorneys from claims of fraud); *see also Sakon v. Johnson*, No. 3:23-CV-107 (AWT), 2024 WL 1175370, at *3 (D. Conn. Mar. 19, 2024) (dismissing claims arising out of defendant's representation of co-defendant in prior state court divorce proceedings).  The Complaint is dismissed on this alternative basis as well.

single alleged scheme with a single, wrongful, narrow goal . . . . [And] [t]his narrow class of alleged victims is not the kind of broad-based unlawful activity that RICO was design[ed] to address.").

As such, Plaintiff's civil RICO claim against Pullman must also be dismissed. *See, e.g.*, *Rivera*, 2023 WL 7553051, at *8 (dismissing civil RICO claim for failure to adequately allege predicates or pattern of racketeering). For the reasons set forth above, the Court concludes that the deficiencies identified herein are substantive in nature and not subject to cure by amendment. *See, e.g.*, *Maguire*, 2022 WL 1718038, at *12 ("[W]e do not find that the complaint 'liberally read' suggests that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe . . . . The problem with [this pro se plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied." (alterations in original) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000))). Plaintiff's alternative request that she be granted leave to amend is DENIED.

**Conclusion**

Pullman's motion to dismiss is GRANTED with prejudice in its entirety. The Clerk of the Court is directed to terminate Pullman as a defendant.

**SO ORDERED** at Bridgeport, Connecticut, this 20th day of December, 2024.

       */s/ Kari A. Dooley*
       KARI A. DOOLEY
       UNITED STATES DISTRICT JUDGE