UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x
COLLEEN KERWICK,                                :
                                                :
                          Plaintiff,            :
                                                :
        v.                                      :   24-CV-427 (SFR)
                                                :
KENNETH DOMINIC SAVINO and the KEN              :
SAVINO TRUST,                                   :
                                                :
                          Defendants.           x
---------------------------------------------------------------- 

**MEMORANDUM AND ORDER**

Plaintiff Colleen Kerwick brought suit against Kenneth Dominic Savino, the Savino Trust, the State of Connecticut, and Pullman & Comley LLC (together "Defendants"). Kerwick seeks damages pursuant to the Alien Tort Statute and the Racketeering Influenced and Corrupt Organizations Act, contending that Defendants sought to coerce, control, and injure her in the course of contentious divorce and custody proceedings in Connecticut state court. Savino remains the sole defendant in this action after the Court[1] granted motions to dismiss filed by the State of Connecticut and Pullman & Comley. For the following reasons, I grant Savino's motion to dismiss.

I.   **BACKGROUND**

I assume familiarity with the factual background and procedural history detailed in the Court's previous opinions.[2] I state here only those details that are necessary to contextualize

---

[1] The Honorable Kari A. Dooley, United States District Judge, presided over this action until it was transferred to me on January 6, 2025.

[2] *Kerwick v. Connecticut*, No. 3:24-CV-427 (KAD), 2024 WL 5077847 (D. Conn. Dec. 11, 2024), ECF No. 42; *Kerwick v. Pullman & Comley LLC* ("*Kerwick II*"), No. 3:24-CV-427 (KAD), 2024 WL 5186861 (D. Conn. Dec. 20, 2024), ECF No. 45.

the issues that remain in this action.

The allegations in the Complaint are rooted in the contentious divorce and custody proceedings in Connecticut state court between Kerwick[3] and Savino. Kerwick says that Savino, with the assistance of his attorneys and the cooperation of state court judges, sought to coerce and control Kerwick under the pretext of sharing custody of their minor child. Compl. ¶ 4, ECF No. 1. Kerwick alleges that Savino has controlled "where she lives, the sanctity of her home, her ability to associate with family and culture, her ability to work, and freedom." *Id.* ¶ 18. In particular, she complains that Savino obtained orders from state court judges requiring her to remain in Connecticut, thereby straining her ability to work as a litigator in New York and maintain ties with family in Ireland. *Id.* ¶ 19. She accuses Savino of lying to police in an effort to evict her from her home, *id.* ¶ 20; of obtaining protective orders using false testimony, *id.* ¶ 22; and of assaulting and recording her on three occasions in an effort to secure evidence that would bolster his attorneys' arguments in family court that Kerwick was mentally unwell, *id.* ¶¶ 21, 42.

Kerwick filed suit on March 23, 2024. Compl.. The Complaint asserts two causes of action. First, Kerwick seeks damages under the Alien Tort Statute ("ATS"), 28 U.S.C § 1350, arguing that Savino sought to control and abuse her in violation of customary international law. Compl. ¶¶ 7-10. Second, Kerwick claims damages under the Racketeering Influenced and

---

[3] Kerwick is a licensed attorney who has elected to represent herself in this action. Although courts owe a duty of special solicitude to *pro se* litigants, *see Rosa v. Doe*, 86 F.4th 1001, 1007 (2d Cir. 2023), "a lawyer representing [herself] ordinarily receives no such solicitude at all." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, on the theory that Defendants enriched themselves by coercing and controlling Kerwick. Compl. ¶¶ 29-32.

Savino, proceeding *pro se*, moved to dismiss the complaint on October 10, 2024. Def. Kenneth Dominic Savino Mot. to Dismiss (Savino's Mem.), ECF No. 33. Kerwick responded in opposition on October 31, 2024. Pl.'s Affirmation in Opp. (Pl.'s Mem.), ECF No. 40. On December 18, 2024, the Court, noting that Savino had submitted an unsworn affidavit averring improper service, *sua sponte* granted Savino leave to supplement his *pro se* submission. ECF No. 43. Savino filed a supplemental memorandum on January 6, 2025. Mot. to Dismiss Follow-Up ("Savino's Supp. Mem."), ECF No. 47. Kerwick responded on January 26, 2025. Mem. of L. in Opp. to Am. Mot. ("Pl.'s Supp. Mem."), ECF No. 48.

## II.   LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155-56 (D. Conn. 2016). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). However, the court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

## III. DISCUSSION

Savino asserts that the Complaint should be dismissed for failure to state a claim and because he says that service was ineffective. Savino's Mem. 2, 7; Savino's Supp. Mem. 2-4. Because I agree that the Complaint fails to state a claim upon which relief can be granted, I need not address whether service was proper.[4]

### A. Alien Tort Statute

I consider first whether Kerwick has stated a claim under the Alien Tort Statute. The ATS provides as follows: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The ATS is "a jurisdictional statute" and "at the time of enactment the jurisdiction enabled federal courts to hear claims in a very limited category defined by the law of nations and recognized at common law." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004). The Supreme Court has assumed that the First Congress enacted the ATS to remedy "three primary offenses: violation of safe conducts, infringement of the rights of ambassadors, and piracy." *Id.* But it is well-settled that customary international law—and the causes of action therefore available under the ATS—is not as limited today as in 1789. *Id.* at 725; *see also Nahl v. Jaoude*, 968 F.3d 173, 179 (2d Cir. 2020) ("But the content of international law is not stagnant, and the ATS is not a statute frozen in time.")[5]; *Filartiga v. Pena-Irala*, 630 F.2d 876,

---

[4] Although the Complaint names the Savino Trust as a defendant, there is no indication that the Savino Trust was ever served in this action, nor does the Complaint distinguish between actions attributable to Savino as an individual and actions taken by the Savino Trust. Because I decide that both causes of action invoked by Kerwick fail to state a claim against Savino, I dismiss the claims against the Savino Trust as well.

[5] The Second Circuit explained in *Nahl*: "International law does not stem from any single, definitive, readily-identifiable authority, but rather emerges from a number of sources, including

881 (2d Cir. 1980) ("[I]t is clear that courts must interpret international law not as it was in 1789, but as it has evolved and exists among the nations of the world today.").

Nonetheless, the Supreme Court has emphasized that "ATS claims 'must be subject to vigilant doorkeeping.'" *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 256 (2018) (quoting *Sosa*, 542 U.S. at 725). Courts should decline to exercise jurisdiction over "any international law norm with less definite content and acceptance among civilized nations than the historical paradigms familiar when § 1350 was enacted." *Sosa*, 542 U.S. at 733. This requires courts to query "whether the norm is accepted in the world community, and whether States universally abide by the norm out of a sense of mutual concern." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 176 (2d Cir. 2009). "[M]atters of mutual concern" include those "that might arise between States in their dealings with each other (such as war crimes)." *Nahl*, 968 F.3d at 179-80 (citation and internal quotation marks omitted). In contrast, customary international law does not include "matters of several concern," i.e., those issues with "which many states are independently concerned (such as murder)." *Id*. Applying this framework, the Second Circuit has recognized that the ATS provides a remedy for "war crimes, torture, slavery, and genocide." *Nahl*, 968 F.3d at 180.

Kerwick contends that Savino violated the Universal Declaration of Human Rights by a "practice of cruel, inhuman or degrading treatment or punishment." *Id.* The Supreme Court has previously rejected efforts to invoke provisions of the Universal Declaration as the basis

---

treaties and the widespread practices and legal beliefs of states (i.e., customary international law). When the rules produced by these various sources are specifically defined and widely accepted among nations, such rules may be added to the collection of international law principles violations of which are actionable under the ATS.'" *Nahl*, 968 F.3d at 176 (citation and internal quotation marks omitted).

5

for an ATS claim, holding that "the Declaration does not of its own force impose obligations as a matter of international law." *Sosa*, 542 U.S. at 734. I thus focus on Kerwick's assertion that Savino violated customary international law by coercively controlling her, Compl. ¶ 10, as well as through "intentional infliction of emotional suffering," *id*. ¶ 9, and assaulting her three times in 2018, 2019, and 2020, *id.* ¶ 21.

Assault cannot form the basis of an ATS claim because Kerwick has not shown that assault is a matter of "mutual concern" that might "arise between States in their dealings with each other." *See Nahl*, 968 F.3d at 180 (citation and internal quotation marks omitted). Nor am I convinced that the manner in which former spouses litigate contentious divorce and custody proceedings is "sufficiently universal, specific, and obligatory" to constitute a norm of customary international law that is actionable under the ATS. *Id*. Kerwick does not provide any evidence of international practice in accordance with this purported norm beyond saying that Savino violated unspecified provisions of the Irish Domestic Violence Act of 2018. Compl. ¶ 10; *cf. Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co*., 517 F.3d 104, 118-23 (2d Cir. 2008) (surveying foreign relations treatises, the Geneva Conventions, and reports from experts in international relations to determine whether the prohibition on defoliants constituted a binding norm). Nor does Kerwick adduce any facts to suggest that customary international law prohibits *individuals* from coercing or controlling former spouses. *See Nahl*, 968 F.3d at 185-89 (Walker, J., concurring) (describing the narrow types of offenses that can be committed by an individual and that violate a norm of customary international law because they affect the relations between states). Furthermore, I note that at least one other court has rejected efforts to expand the ATS into disputes around child custody, holding that any prohibition on a custodial parent migrating with their children into a new country is not

6

supported by the specific level of international consensus necessary to infer a cause of action under the ATS. *Taveras v. Taveraz*, 477 F.3d 767, 776-82 (6th Cir. 2007). Although the Sixth Circuit's holding in *Taveras* is of course not binding on me, I find its reasoning persuasive and further evidence that the ATS does not provide a remedy for the conduct complained of here.

Kerwick's claim invokes a purported norm of customary international law that is less well-defined than the international crimes familiar to the First Congress when it ratified the ATS. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 125 (2d Cir. 2013) (concluding that the prohibition on terrorism is not supported by the global consensus necessary to infer a cause of action under the ATS). I therefore conclude that Kerwick's ATS claim must be dismissed for failure to state a claim.[6]

### B. Civil RICO

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Laydon v. Cooperatieve Rabobank U.A.*, 55 F.4th 86, 100 (2d Cir. 2022). At issue here is whether Kerwick has adequately pleaded a violation of § 1962. To

---

[6] Some courts have approached the *Sosa* analysis under the rubric of a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. *See, e.g.*, *Taveras v. Taveraz*, 477 F.3d 767, 781 (6th Cir. 2007); *Al Shimari v. CACI Premier Tech., Inc.*, 684 F. Supp. 3d 481, 485 (E.D. Va. 2023). In contrast, the Second Circuit affirmed a district court's dismissal pursuant to Rule 12(b)(6) of an ATS claim. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 125 (2d Cir. 2013). Consistent with that practice, district courts in the Second Circuit have conducted the *Sosa* analysis under Rule 12(b)(6). *See, e.g.*, *Kerwick II*, 2024 WL 5186861, at *2-3; *Khokhlov v. Euroclear SA/NV*, No. 23-CV-01501, at *4 (JGLC)(SN), 2024 WL 4451413 (S.D.N.Y. June 27, 2024), *report and recommendation adopted*, 2024 WL 4345586 (S.D.N.Y. Sept. 30, 2024); *Tymoshenko v. Firtash*, No. 11-CV-2794 (KMW), 2013 WL 1234821, at *5-7 (S.D.N.Y. Mar. 26, 2013). Under either standard, Kerwick's ATS claim must be dismissed because she has failed to demonstrate the existence of a binding norm of customary international law relating to custody determinations that would provide a cause of action under the ATS.

establish a § 1962 violation, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018). To demonstrate a pattern of racketeering activity, a plaintiff must allege two or more predicate acts, as defined in 18 U.S.C. § 1961(1), that "pose a threat of continuous criminal activity" and are "related to each other." *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "Racketeering activity" as described in 18 U.S.C. § 1961(1) encompasses "any act 'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions, including mail and wire fraud, and any 'offense' involving bankruptcy or securities fraud or drug-related activities that is 'punishable' under federal law." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481-82 (1985).

The Complaint's RICO allegations center on Savino's assertedly (1) improper efforts to dictate where Kerwick could live and work, (2) untrue statements submitted in state court custody and divorce proceedings, and (3) multiple assaults that were orchestrated and recorded to secure evidence that would undermine Kerwick's claim to be a fit parent. Compl. ¶¶ 29-50.[7] Assault does not constitute a RICO predicate act. *See* 18 U.S.C. § 1961(1)[8]; *Park S. Assocs. v. Fischbein*, 626 F. Supp. 1108, 1114 (S.D.N.Y.) ("Assault is not a crime that can constitute a predicate 'racketeering act' under RICO . . . ."), *aff'd sub nom.*, F.2d 1128 (2d Cir. 1986). Nor

---

[7] I note that Kerwick's RICO allegations are identical to those she pleaded under the Alien Tort Statute. *See* Compl. ¶¶ 7-28 (ATS claims), 29-50 (RICO claims).

[8] A state law offense meeting the definition of a RICO predicate is "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A).

can Kerwick recover on the theory that Savino engaged in racketeering through his conduct in the state court proceedings, as "allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act." *Kim,* 884 F.3d at 104. The Second Circuit supported this holding in part by reasoning that permitting a disappointed litigant to bring a RICO claim predicated on their adversary's assertedly frivolous lawsuit might "engender wasteful satellite litigation." *Id.* (citation and internal quotation marks omitted). Those same considerations counsel against permitting Kerwick to re-try the merits of child custody and divorce proceedings already litigated extensively in state court.

Finally, as the Court previously held, there can be no RICO liability where, as here, the purported pattern of racketeering activity does not extend beyond "a narrow scope, including one victim and a limited number of participants." *Kerwick II*, 2024 WL 5186861, at *4 (quoting *Maguire v. Ameriprise Fin. Servs., LLC*, No. 3:22-CV-0128 (VAB), 2022 WL 1718038, at *10 (D. Conn. May 27, 2022)). For these reasons, I conclude that Kerwick's RICO claim must be dismissed.

### C.   Leave to Amend

In the ordinary course, a "court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir.1999) (citation and internal quotation marks omitted). Nonetheless, a court may deny leave to amend where a pleading suffers from substantive defects rather than issues with framing. *Cuoco*, 222 F.3d 99, 112 (2d Cir. 2000). Kerwick's ATS and RICO claims suffer from serious substantive defects, which leads me to find that granting leave to amend would be futile. Kerwick's complaint is therefore dismissed with prejudice.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, I GRANT Savino's Motions to Dismiss, ECF Nos. 33, 47. Kerwick's claims against Savino are dismissed with prejudice and without leave to amend. The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

New Haven, Connecticut
September 4, 2025

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge